# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>WHITTAKER, CLARK & DANIELS, INC., *et al.*<br><br>Debtors. | Chapter 11<br><br>Bankr. Case No. 23-13575 (MBK) |
| WHITTAKER, CLARK & DANIELS, INC., BRILLIANT NATIONAL SERVICES, INC., L. A. TERMINALS, INC., and SOCO WEST, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>BRENNTAG AG, BRENNTAG CANADA INC., BRENNTAG GREAT LAKES, LLC, BRENNTAG MID-SOUTH, INC., BRENNTAG NORTH AMERICA, INC., BRENNTAG NORTHEAST, INC., BRENNTAG PACIFIC, INC., BRENNTAG SOUTHEAST, INC., BRENNTAG SOUTHWEST, INC., BRENNTAG SPECIALTIES, INC., BRENNTAG SPECIALTIES LLC, COASTAL CHEMICAL CO., LLC, MINERAL AND PIGMENT SOLUTIONS, INC., THOSE PARTIES LISTED ON APPENDIX A TO THE COMPLAINT, and JOHN AND JANE DOES 1-1,000,<br><br>Defendants. | Adv. Pro. No. 23-01245 (MBK) |
| OFFICIAL COMMITTEE OF TALC CLAIMANTS *et al.*,<br><br>Appellants,<br><br>v.<br><br>WHITTAKER, CLARK & DANIELS, INC., *et al.*,<br><br>Appellees. | Civil Action No. 3:24-cv-10914-ZNQ |

## APPELLANTS' OPENING BRIEF

DOC# 10305924

## CORPORATE DISCLOSURE

Pursuant to Fed. R. Bankr. P. 8012 and Fed. R. App. P. 26.1 and 28(a)(1), the Appellants make the following disclosures:

### The Official Committee of Talc Claimants

The Official Committee of Talc Claimants of Whittaker, Clark & Daniels, Inc. *et al.* states that it was appointed by the United States Department of Justice, Office of the United States Trustee, Regions 3 & 9, effective as of May 23, 2023 [JA1184], pursuant to 11 U.S.C. § 1102(a)(1), and that it is not a corporate party.

The current members of the Official Committee of Talc Claimants are:

1. Kathy Ripley Didawick (on behalf of Ann Ripley)

2. Blue Cross Blue Shield Association

3. Katia Figueroa

4. Virginia Harrington

5. Juliet Gray

6. Sandra Jankowski (individually and on behalf of Leo Jankowski)

7. Sarah Plant

8. Tara Valentine (on behalf of Patricia Krempecki)

9. Shelly Yerkes

### The Individual Appellants

Appellants Donna A. Spaulding, Shelly Yerkes, Lilo Cooper, Katia Figueroa, and Juliet Gray (collectively, the "Individual Appellants") are individuals with

personal injury claims based on disease caused by asbestos-contaminated talc for which Whittaker, Clark & Daniels, Inc., Brenntag N.A., or one or more of their affiliates are responsible.  The Individual Appellants are not subject to the disclosure provisions of Federal Rule of Appellate Procedure 26.1.

# TABLE OF CONTENTS

Corporate Disclosure.................................................................................i

Preliminary Statement..............................................................................1

Statement Regarding Jurisdiction ............................................................2

Statement of the Issues.............................................................................3

Standard of Review..................................................................................4

Statement of the Case...............................................................................5

I.    Background of WCD and Its Debtor Affiliates ................................5

II.   The Debtors Seek a Declaration that the Successor Liability Claims Are Estate Property and Therefore Subject to the Automatic Stay ........................8

III.  The Bankruptcy Court Enters a Temporary Restraining Order Enjoining the Successor Liability Claims Which Stays in Effect Until the Summary Judgment Motion Is Decided............................................................9

      A.    The Debtors Enter into a Settlement Agreement to Compromise the Successor Liability Claims.................................................10

IV.   The Debtors Seek to Extend the Automatic Stay to and/or Preliminarily Enjoin Direct Claims Against Brenntag........................................11

Summary of the Argument.....................................................................17

Argument................................................................................................22

I.    The Bankruptcy Court Erred in Ruling *Sua Sponte* That the Automatic Stay—Without Any Extension Thereof—Applies to the Direct Claims........22

II.   The Bankruptcy Court Does Not Have Subject Matter Jurisdiction to Enjoin Talc Claimants' Direct Claims Against Brenntag...............................27

      A.    The Bankruptcy Court Erroneously Ruled that It Had Core Jurisdiction to Enjoin the Direct Claims Merely Because the Debtors Sought Relief Under Section 362 .............................................27

B. The Bankruptcy Court Erred in Concluding that It Had "Related To" Jurisdiction to Enjoin the Direct Claims ..........................................31

III. The Bankruptcy Court Erred in Extending the Automatic Stay to the Direct Claims Under the "Unusual Circumstances" Exception......................36

A. The Bankruptcy Court Erred in Holding that the Potential for an Indemnification Right Satisfies the "Identity of Interest" Test...............37

B. The Alleged Indemnification Right Does Not Threaten the Estate's Assets or the Debtors' Reorganization....................................................41

C. The Court Erred by *Sua Sponte* Deciding that WCD Is an Indispensable Party to the Direct Claims ................................................42

IV. The Bankruptcy Court Abused Its Discretion in Issuing a Preliminary Injunction to Enjoin the Direct Claims ...........................................................47

A. The Debtors Did Not Meet the High Burden of Establishing the Necessity of a Preliminary Injunction .....................................................47

B. The Bankruptcy Court Erred in Holding that the Likelihood of Success Prong Was Satisfied....................................................................48

C. The Bankruptcy Court Erred in Holding that Phantom Indemnification Obligations Created a Risk of Irreparable Harm to the Estates ..............................................................................................50

D. The Bankruptcy Court Did Not Appropriately Balance the Competing Harms....................................................................................53

E. The Bankruptcy Court Abused Its Discretion in Holding that Enjoining the Direct Claims Is in the Public Interest...............................53

Conclusion ..........................................................................................................55

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.H. Robins Co. v. Piccinin*,
 788 F.2d 994 (4th Cir. 1986) ...............................................................36, 37, 38

*Adams v. Freedom Forge Corp.*,
 204 F.3d 475 (3d Cir. 2000) ...............................................................................48

*ADP, Inc. v. Levin*,
 No. 21-2187, 2022 WL 1184202 (3d Cir. Apr. 21, 2022)............................50, 51

*Algemene Bank Nederland, N.V. v. Hallwood Indus., Inc.*,
 133 B.R. 176 (W.D. Pa. 1991)......................................................................20, 38

*Alpha Painting & Constr. Co. Inc. v. Del. River Port Auth. of Pa. & N.J.*,
 853 F.3d 671 (3d Cir. 2017), *as amended* (Apr. 26, 2017) ...............................42

*In re American Film Technologies, Inc.*,
 175 B.R. 847 (Bankr. D. Del. 1994)...................................................................39

*Bank of Am. Nat. Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*,
 844 F.2d 1050 (3d Cir. 1988) .............................................................................46

*In re Bankr. Appeal of Allegheny Health, Educ. & Rsch. Found.*,
 252 B.R. 309 (W.D. Pa. 1999)............................................................................26

*BDO Seidman LLP v. Strategic Res. Corp.*,
 896 N.Y.S.2d 15 (2010).......................................................................................46

*Belcufine v. Aloe*,
 112 F.3d 633 (3d Cir. 1997) ...............................................................................34

*Biogen Int'l GmbH v. Amneal Pharms. LLC*,
 487 F. Supp. 3d 254 (D. Del. 2020).............................................................43, 52

*Bondex Int'l v. Ott*,
 774 N.E.2d 82 (Ind. Ct. App. 2002) ...................................................................45

*Bostick v. Flex Equip. Co.*,
  54 Cal. Rptr. 3d 28 (2007) ...................................................................................45

*Brown v. Jevic*,
  575 F.3d 322 (3d Cir. 2009) .......................................................................18, 24

*CAE Indus. Ltd. v. Aerospace Holdings Co.*,
  116 B.R. 31 (S.D.N.Y.1990) ...............................................................................36

*Casco Indem. Co. v. O'Connor*,
  755 A.2d 779 (R.I. 2000)....................................................................................46

*In re CIS Corp.*,
  172 B.R. 748 (S.D.N.Y. 1994) ...........................................................................29

*In re Combustion Eng'g, Inc.*,
  391 F.3d 190 (3d Cir. 2004), *as amended* (Feb. 23, 2005) ........................*passim*

*Cook v. Blazer*,
  No. 7:15CV456, 2016 WL 3453663 (W.D. Va. June 20, 2016).......................45

*D'Orazio v. Hartford Ins. Co.*,
  459 F. App'x 203 (3d Cir. 2012) ........................................................................34

*Dent v. Cunningham*,
  786 F.2d 173 (3d Cir. 1986) ...............................................................................54

*In re Drexel Burnham Lambert Grp., Inc.*,
  146 B.R. 92 (S.D.N.Y. 1992) .............................................................................52

*In re Eagleston*,
  236 B.R. 183 (Bankr. D. Md. 1999) ...................................................................44

*In re El Apple, Inc.*,
  362 S.W.3d 154 (Tex. App. 2012).......................................................................45

*Elkadrawy v. Vanguard Grp., Inc.*,
  584 F.3d 169 (3d Cir. 2009) .........................................................................43, 52

*In re Exide Techs.*,
  544 F.3d 196 (3d Cir. 2008) ...............................................................................29

*In re Fed.-Mogul Glob., Inc.*,
    300 F.3d 368 (3d Cir. 2002) ........................................................................19, 35

*Forcine Concrete & Constr. Co. v. Manning Equip. Sales & Serv.*,
    426 B.R. 520 (E.D. Pa. 2010) ................................................................................38

*In re G-I Holdings, Inc.*,
    420 B.R. 216 (D.N.J. 2009) ..................................................................................47

*GATX Aircraft Corp. v. M/V Courtney Leigh*,
    768 F.2d 711 (5th Cir. 1985) ................................................................................25

*Ge. Refractories Co. v. First State Ins. Co.*,
    500 F.3d 306 (3d Cir. 2007) ..................................................................................43

*Gold v. Johns-Manville Sales Corp.*,
    723 F.2d 1068 (3d Cir. 1983) ........................................................................24, 53

*Granfinanciera, S.A. v. Nordberg*,
    492 U.S. 33 (1989).................................................................................................54

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982)..............................................................................................54

*Harrington v. Purdue Pharma L.P.*,
    603 U.S. 204 (2024)........................................................................................23, 30

*In re Imerys Talc Am., Inc.*,
    No. 19-MC-103 (MN), 2019 WL 3253366 (D. Del. July 19, 2019)............19, 32

*Jackson v. Trump Ent. Resorts, Inc.*,
    No. CV 13-1605 (JHR/JS), 2015 WL 13637411 (D.N.J. Feb. 11,
    2015) ..............................................................................................20, 23, 38, 40

*James v. Varano*,
    No. 1:14-CV-01951, 2017 WL 895569 (M.D. Pa. Mar. 7, 2017)......................49

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*,
    11 F.3d 399 (3d Cir. 1993) ....................................................................21, 43, 46

*In re Johns-Manville Corp.*,
    801 F.2d 60 (2d Cir. 1986) ...................................................................................31

*Jones v. Schortman*,
No. 22-CV-1512 (VDO), 2024 WL 449612 (D. Conn. Feb. 5,
2024) ...................................................................................................................49

*In re Kmart Corp.*,
285 B.R. 679 (Bankr. N.D. Ill. 2002) ................................................................44

*In re Lower Bucks Hosp.*,
488 B.R. 303 (E.D. Pa. 2013), *aff'd*, 571 F. App'x 139 (3d Cir.
2014) ...................................................................................................................32

*In re LTL Management, LLC*,
638 B.R. 291 (D.N.J. 2022) ...............................................................................39

*Mar. Elec. Co., Inc. v. United Jersey Bank*,
959 F.2d 1194 (3d. Cir. 1991), *reh'g granted and opinion vacated*
(Jan. 10, 1992), *opinion reinstated on reh'g* (Mar. 24, 1992)...........................24

*McCartney v. Integra Nat'l Bank N.*,
106 F.3d 506 (3d Cir. 1997) ........................................................................25, 26

*McDowell v. Philadelphia Hous. Auth. (PHA)*,
423 F.3d 233 (3d Cir. 2005) ................................................................................5

*McMillian v. Konecny*,
No. 9:15-CV-0241, 2018 WL 813515 (N.D.N.Y. Feb. 9, 2018) .......................48

*In re Mid-Atl. Handling Sys.*,
LLC, 304 B.R. 111 (Bankr. D.N.J. 2003)...........................................................38

*Millard v. Developmental Disabilities Inst., Inc.*,
266 B.R. 42 (E.D.N.Y. 2001) .............................................................................41

*In re Monroe Well Serv., Inc.*,
67 B.R. 746 (Bankr. E.D. Pa. 1986) ...................................................................26

*Monsanto Co. v. Geertson Seed Farms*,
561 U.S. 139 (2010)............................................................................................47

*Pacor, Inc. v. Higgins*,
743 F.2d 984 (3d Cir. 1984) ........................................................................*passim*

*Parklane Hosiery Co., Inc. v. Shore*,
    439 U.S. 322 (1979)............................................................................................44

*Patton v. Bearden*,
    8 F.3d 343 (6th Cir. 1993) ................................................................................26

*In re Phar-Mor, Inc. Sec. Litig.*,
    164 B.R. 903 (W.D. Pa. 1994)..........................................................................47

*In re Phila. Newspapers LLC*,
    410 B.R. 404 (Bankr. E.D. Pa. 2009), *aff'd sub nom. In re Phila.*
    *Newspapers, LLC*, 423 B.R. 98 (E.D. Pa. 2010) ...............................................26

*In re Philadelphia Newspapers, LLC*,
    407 B.R. 606 (E.D. Pa. 2009)..............................................................................5

*In re Philadelphia Newspapers, LLC*,
    423 B.R. 98 (E.D. Pa. 2010)................................................................................5

*Picard v. Fairfield Greenwich Ltd.*,
    762 F.3d 199 (2d Cir. 2014) ..............................................................................36

*Pitts v. Unarco Indus.*,
    698 F.2d 313 (7th Cir. 1983) .............................................................................25

*Queenie, Ltd. v. Nygard Int'l*,
    321 F.3d 282 (2d Cir. 2003) .......................................................................45, 52

*In re Resorts Int'l, Inc.*,
    372 F.3d 154 (3d Cir. 2004) ..............................................................................28

*Roverano v. John Crane, Inc.*,
    226 A.3d 526 (2020)..........................................................................................45

*Stoe v. Flaherty*,
    436 F.3d 209 (3d Cir. 2006), *as amended* (Mar. 17, 2006).................................27

*Suarez v. Alonso*,
    2013 WL 5288021 (D.N.J. Sept. 17, 2013).........................................................4

*Tchrs. Ins. & Annuity Ass'n of Am. v. Butler*,
    803 F.2d 61 (2d Cir. 1986) ................................................................................26

*TPC Grp. Litig. Pls. v. SK Second Rrsv. L.P.*,
   660 B.R. 177 (D. Del. 2024)..............................................................16, 18, 23, 51

*In re Uni-Marts, LLC*,
   399 B.R. 400 (Bankr. D. Del. 2009).............................................................20, 41

*In re W.R. Grace & Co.*,
   591 F.3d 164 (3d Cir. 2009) .........................................................................*passim*

*In re W.R. Grace & Co.*,
   No. 01- 01139 (JKF), 2004 WL 954772 (Bankr. D. Del. Apr. 29,
   2004) ...........................................................................................................36, 37

*Williford v. Armstrong World Indus., Inc.*,
   715 F.2d 124 (4th Cir. 1983) ..............................................................................25

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008)..................................................................................47, 49, 50

## Statutes

11 U.S.C. § 105.....................................................................................*passim*

11 U.S.C. § 105(a) ......................................................................26, 31, 37

11 U.S.C. § 362.....................................................................................*passim*

11 U.S.C. § 362(a) ................................................................................*passim*

11 U.S.C. § 362(a)(1)...................................................................................24, 25

11 U.S.C. § 362(a)(3).....................................................................................8

11 U.S.C. § 502(e)(1)(B) ................................................................................52, 53

11 U.S.C. § 541(a) .........................................................................................9

28 U.S.C. § 158(a) ......................................................................................2, 17

28 U.S.C. § 158(a)(1)......................................................................................2

Mich. Comp. Laws Ann. § 600.2957........................................................................46

## Other Authorities

1 COLLIER ON BANKRUPTCY ¶ 3.01 (16th ed. 2024) ................................................28

3 COLLIER ON BANKRUPTCY ¶ 362.03 (16th ed. 2024) ...........................................25

Fed. R. Bankr. P. 8002(a)(1).......................................................................................3

Fed. R. Civ. P. 19 .............................................................................................*passim*

Appellants the Official Committee of Talc Claimants (the "Committee") of Whittaker, Clark & Daniels, Inc. ("WCD") and its affiliated debtors and debtors-in-possession in the above-captioned bankruptcy case, Donna A. Spaulding, Shelly Yerkes, Lilo Cooper, Katia Figueroa, and Juliet Gray (together with the Committee, the "Appellants") hereby jointly submit this opening brief of Appellants.

## PRELIMINARY STATEMENT

This appeal challenges the Bankruptcy Court's unprecedented decision to enjoin talc victims from exercising their Constitutional rights to seek redress for their injuries on account of the independent conduct and products of a solvent non-debtor. In the proceedings below, the Bankruptcy Court granted the Debtors' request to enjoin talc victims from prosecuting direct claims (i.e., non-derivative claims) against non-debtor Brenntag and, *sua sponte*, found that the automatic stay applied to such claims primarily based on Brenntag's claim that it holds contractual indemnification rights against the Debtors' estates for those direct claims. However, the record provides no support whatsoever for Brenntag's claim, every party other than Brenntag disputes Brenntag's claim, and the plain language in the contracts between the Debtors and Brenntag affirmatively disproves Brenntag's claim.

Notwithstanding this record, the Bankruptcy Court first erroneously held that the automatic stay applied to such claims, despite the automatic stay's clear statutory language that it applies only to suits against the Debtors. Further, the Bankruptcy

Court held that it had both "core" and "related to" jurisdiction to issue a preliminary injunction for the direct claims, despite such claims being state-law tort claims that do not involve the conduct of the Debtors or implicate their estates. Finally, the Bankruptcy Court held that "unusual circumstances" warranted extending the automatic stay to such claims through an injunction, and that a preliminary injunction should issue to enjoin such claims. But the Bankruptcy Court misapplied applicable law in reaching those conclusions. Each of these errors is an independent ground for reversing the Bankruptcy Court.

The Appellants are not aware of a single instance—and neither the parties nor the Bankruptcy Court has identified any—where a bankruptcy court has granted such relief or even suggested it has the authority to do so. The Bankruptcy Court's decision exceeds the limits of its authority and undermines basic principles of comity with state courts and deference to state law. The judgment below should be reversed in its entirety.

## STATEMENT REGARDING JURISDICTION

As discussed herein, Appellants challenge the Bankruptcy Court's jurisdiction to enter the relief it granted that is subject to this appeal. This Court's jurisdiction is proper pursuant to 28 U.S.C. § 158(a)(1). The Bankruptcy Court stated that its ruling "constitutes a final appealable order within the meaning of 28 U.S.C. § 158(a)." [JA1038 ¶ 14].

2

The appeal is timely because the notice of appeal was filed on December 3, 2024 [JA1086], which is within the time prescribed by Federal Rule of Bankruptcy Procedure 8002(a)(1) for filing a notice of appeal.

**STATEMENT OF THE ISSUES**

1.     Did the Bankruptcy Court err in concluding that 11 U.S.C. § 362 automatically enjoins direct (i.e., non-derivative) claims against certain non-debtors on the grounds that the complaints containing such direct claims allege exposure to the Debtors' talc products, notwithstanding that such complaints do not assert any claims against or seek any damages from those non-debtors based on exposure to the Debtors' talc products?

2.     Did the Bankruptcy Court err in concluding that it has core subject matter jurisdiction to enjoin talc claimants' direct (i.e., non-derivative) claims against certain non-debtors because the debtor invoked a substantive right under 11 U.S.C. § 362?

3.     Did the Bankruptcy Court err in concluding that it has "related to" subject matter jurisdiction to enjoin talc claimants' direct (i.e., non-derivative) claims against certain non-debtors on the grounds that adjudication of such direct claims may trigger an alleged, but disputed obligation of the Debtors' estates to indemnify such non-debtors?

4.    Did the Bankruptcy Court err in concluding that "unusual circumstances" justify extending the automatic stay under 11 U.S.C. § 362 to enjoin talc claimants' direct (i.e., nonderivative) claims against certain non-debtors on the grounds that adjudication of such direct claims may trigger an alleged, but disputed obligation of the Debtors' estates to indemnify such non-debtors?

5.    Did the Bankruptcy Court err in concluding that "unusual circumstances" justify extending the automatic stay under 11 U.S.C. § 362 to enjoin talc claimants' direct (i.e., non-derivative) claims against certain non-debtors on the grounds that Debtor Whittaker, Clark & Daniels, Inc. is an "indispensable" party in the litigation of such claims under Federal Rule of Civil Procedure 19 or comparable state rules of procedure?

6.    Did the Bankruptcy Court err in issuing a preliminary injunction under 11 U.S.C. § 105 extending the automatic stay under 11 U.S.C. § 362 to enjoin talc claimants' direct (i.e., non-derivative) claims against certain non-debtors?

## STANDARD OF REVIEW

"A district court reviews 'the bankruptcy court's legal determinations *de novo*, its factual findings for clear error and its exercise of discretion for abuse thereof.'" *Suarez v. Alonso*, 2013 WL 5288021, at \*4 (D.N.J. Sept. 17, 2013) (quoting *In re United Healthcare System, Inc*., 396 F.3d 247, 249 (3d Cir. 2005)).

4

The question of the bankruptcy Court's jurisdiction is reviewed *de novo*. *In re W.R. Grace & Co.*, 591 F.3d 164, 170 n.7 (3d Cir. 2009) ("Whether subject matter jurisdiction exists is a question of law, and thus [the] standard of review is *de novo*.").

Whether "unusual circumstances" exist warranting extension of the automatic stay to a third-party action "constitutes a mixed question of law and fact for which the Court must decide whether the Bankruptcy Court's decision rested upon an errant conclusion or law or clearly erroneous finding of fact." *In re Philadelphia Newspapers, LLC*, 423 B.R. 98, 103-04 (E.D. Pa. 2010). The Bankruptcy Court's "issuance of the preliminary injunction is reviewed for abuse of discretion[.]" *In re Philadelphia Newspapers, LLC*, 407 B.R. 606, 610 (E.D. Pa. 2009). "An abuse of discretion may occur as a result of an errant conclusion of law, an improper application of law to fact, or a clearly erroneous finding of fact." *McDowell v. Philadelphia Hous. Auth. (PHA)*, 423 F.3d 233, 238 (3d Cir. 2005).

STATEMENT OF THE CASE

## I.   BACKGROUND OF WCD AND ITS DEBTOR AFFILIATES

On April 26, 2023, WCD filed a petition for relief under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court").[1]  That same day, voluntary chapter 11 petitions

---

[1]   JA1142.

were filed by WCD's Berkshire-owned affiliates—Brilliant National Services, Inc. ("Brilliant"), L.A. Terminals, Inc. ("LAT"), and Soco West, Inc. ("Soco") (collectively with WCD, the "Debtors").[2]  WCD's decades-long reign as one of the largest talc and industrial compound supply-and-distribution businesses in the United States left the company saddled with billions of dollars in talc liabilities.[3] WCD is a subsidiary of Berkshire Hathaway, Inc.'s ("Berkshire") group of companies, through the Berkshire affiliate National Indemnity Company ("NICO") and its subsidiary Ringwalt & Liesche Co.[4]  As explained more fully below, in acquiring WCD, NICO agreed to indemnify Brenntag N.A. ("Brenntag") for personal injury and environmental tort claims predicated on WCD's historic talc operations ("Successor Liability Claims").[5]

NICO's indemnification obligations are the product of WCD's complicated corporate history.  In 2004, pursuant to the Master Sale and Purchase Agreement ("2004 MSPA"),[6] WCD's then-parent Stinnes Corporation ("Stinnes" n/k/a "DB US") transferred substantially all of WCD, Soco, and Brilliant's operating assets and

---

[2]   *Id.*

[3]   *See* JA1161 ¶¶ 2, 17 ("First Day Decl.").

[4]   JA1161 ¶¶ 3, 23.

[5]   *See* JA529 ("2007 SPA").

[6]   JA352 ("2004 MSPA").

intellectual property (but no talc-related liabilities) to Bain Capital, LP ("Bain") under the umbrella of the newly created Brenntag ("2004 Transaction").[7]

As part of the 2004 Transaction, Stinnes and Bain agreed that WCD would indemnify Brenntag for any damages and defense costs to Brenntag from lawsuits predicated on WCD's pre-transaction talc operations.[8]  Stinnes, in turn, agreed to provide an unlimited backstop to WCD's indemnity obligations to Brenntag if WCD became "unable to financially satisfy" them.[9]

In 2007, pursuant to a Stock Purchase Agreement ("2007 SPA"), Berkshire purchased the Debtors, through its affiliate NICO, for the nominal price of $1.[10]  In return, NICO agreed to indemnify Stinnes for its indemnity obligations to Brenntag under the terms of the 2004 MSPA.[11]  Collectively, the chain of indemnification obligations pursuant to the 2004 MSPA and the 2007 SPA shifts ultimate financial responsibility for any claims against Brenntag based on WCD's pre-transaction talc operations to NICO, the Debtors' highly solvent Berkshire-affiliated parent.

---

[7]  *See generally* JA352; *see also* JA1161 ¶¶ 21-25.

[8]  JA352 § 12.

[9]  *Id.*

[10]  JA529 § 2.02.

[11]  *Id.* § 8.03.

## II.    THE DEBTORS SEEK A DECLARATION THAT THE SUCCESSOR LIABILITY CLAIMS ARE ESTATE PROPERTY AND THEREFORE SUBJECT TO THE AUTOMATIC STAY

On September 7, 2023, the Debtors commenced an adversary proceeding by filing a complaint ("Complaint"),[12] along with a summary judgment motion on three specific counts of the Complaint ( "Summary Judgment Motion").[13]  On October 12, 2023, the Bankruptcy Court entered a case management order which limited the Summary Judgment Motion to Counts I and IV of the Complaint.[14]  In Count I, the Debtors sought a declaration by the Bankruptcy Court that the commencement of, continuation of, or settlement of the Successor Liability Claims[15] violates the automatic stay imposed by 11 U.S.C. § 362(a)(3).[16]  In Count IV, the Debtors sought

---

[12]  JA1.

[13]  JA32.

[14]  JA589 ¶ 2.

[15]  The Complaint defines "Successor Liability Claims" broadly to include all "claims against certain non-Debtor entities seeking to establish such entities' liability for Tort Claims on any grounds, including, without limitation, that such entities are successors to, or alter egos of, the Debtors."  JA1 ¶ 1.  The Complaint also defines "Tort Claims" to include all "existing and future tort claims against the Debtors alleging injuries resulting from exposure to products containing talc, asbestos, or chemical compounds processed or distributed by the Debtors or their predecessors in interest" and "environmental litigation against the Debtors relating to the production or handling of hazardous materials which allegedly contaminated certain properties."  *Id.*

[16]  *Id.* ¶¶ 60-66.

a declaration that the Successor Liability Claims are property of the Debtors' bankruptcy estates pursuant to 11 U.S.C. § 541(a).[17]

On August 28, 2024, the Court entered an order granting the Summary Judgment Motion as to Counts I and IV (the "<u>Summary Judgment Order</u>").[18] The Summary Judgment Order provides that the Successor Liability Claims are property of the Debtors' estates subject to the automatic stay provisions set forth in section 362(a) of the Bankruptcy Code.[19][20]

## III. THE BANKRUPTCY COURT ENTERS A TEMPORARY RESTRAINING ORDER ENJOINING THE SUCCESSOR LIABILITY CLAIMS WHICH STAYS IN EFFECT UNTIL THE SUMMARY JUDGMENT MOTION IS DECIDED

Approximately two months after filing the Complaint, on October 31, 2023, the Debtors filed a motion requesting a temporary restraining order ("<u>TRO</u>") to enjoin certain scheduled Successor Liability Claims with imminent trial dates or dispositive hearings, along with procedures for extending the TRO on a 28-day

---

[17] *Id.* ¶¶ 90-91.

[18] JA692.

[19] *Id.* ¶¶ 4-6.

[20] After the Bankruptcy Court certified the Summary Judgment Order for direct appeal, the Third Circuit authorized direct appellate review. JA945; *In re Whittaker, Clark & Daniels, Inc.*, No. 25-1044 (3d Cir. 2025), ECF No. 1.

rolling basis (the "<u>TRO Motion</u>").[21]  The Committee filed a limited objection to the TRO Motion.[22]

On November 22, 2023, the Court entered an order granting the TRO Motion.[23]  Between November 22, 2023, and September 18, 2024, the Bankruptcy Court extended the TRO nine times.[24]

### A.    The Debtors Enter into a Settlement Agreement to Compromise the Successor Liability Claims

On September 3, 2024, the Debtors filed a motion seeking approval of a proposed settlement they entered into with Brenntag, NICO, and DB US (the "<u>Contributing Parties</u>") to settle the Successor Liability Claims and other estate claims in exchange for a $535 million contribution by NICO (the "<u>Settlement Agreement</u>").[25]  If approved, the Settlement Agreement would release Brenntag's indemnification rights against the Debtors under the 2004 MSPA.  The Settlement Agreement, however, neither addresses nor affects claimants' ability to assert direct claims against Brenntag for its post-2004 Transaction liability.[26]  The Debtors also

---

[21]  JA596.

[22]  *See generally* JA640.

[23]  JA663.

[24]  JA672 ¶ 1.

[25]  *See generally* JA1186.

[26]  *Id.* ¶ 4 ("[T]he Settlement Agreement does not prohibit claimants from pursuing any direct claims they may have against the Contributing Parties, including any claims against Brenntag for liabilities arising from Brenntag's own post-February 2004 operations."); *see also id.* ¶ 81 ("[N]othing in the Settlement Agreement

do not intend to address direct claims against Brenntag in their proposed plan of reorganization.[27]

## IV. THE DEBTORS SEEK TO EXTEND THE AUTOMATIC STAY TO AND/OR PRELIMINARILY ENJOIN DIRECT CLAIMS AGAINST BRENNTAG

On September 12, 2024, the Debtors filed a motion seeking to extend the automatic stay to, or alternatively, to preliminary enjoin two categories of scheduled talc claims against Brenntag (the "Motion").[28]   The first category of claims—comprising 657 of the 684 scheduled claims—are "expressly pled as Successor Liability Claims."[29]   The Committee does not dispute that, under the Summary Judgment Order, those 657 claims are stayed under § 362(a).[30]   As such, the instant appeal does not concern the Debtors' request to enjoin those 657 Successor Liability Claims.

The second category of claims—comprising 27 of the 684 scheduled claims—are talc personal injury claims which expressly seek damages against Brenntag only on account of Brenntag's conduct and products following Brenntag's acquisition of

―――――――――――――――

releases Brenntag from independent, direct liability for its own conduct after the sale of the Debtors' assets to Brenntag in February 2004.").

[27]  *See* JA1239.

[28]  JA693.

[29]  *Id.* ¶¶ 6-7.

[30]  JA827 ¶¶ 6-7.   As noted, *supra* note 20, the Committee has appealed the Bankruptcy Court's Summary Judgment Order, which appeal is currently pending before the Third Circuit.

the WCD business in 2004 (the "Direct Claims"). The Debtors had not, at any point before filing the Motion, sought to enjoin Direct Claims against Brenntag. In the Debtors' own words, each of the Direct Claims is a "talc/asbestos claim that seeks to establish Brenntag's *direct liability for injuries resulting from Brenntag's independent conduct post-2004* . . . but which also contains allegations of pre-2004 talc/asbestos exposure . . . or which does not provide sufficient information in the underlying complaint for the Debtors to identify the year in which plaintiff was first allegedly exposed to talc/asbestos . . . ."[31] According to the Debtors, the mere existence of allegations of pre-2004 Transaction exposure in a complaint, or the omission of exposure periods in a complaint, results in each of those Direct Claims "implicat[ing] the Debtors' conduct, operations, and potential indemnification obligations to Brenntag."[32]

The only basis for any "potential indemnification obligations to Brenntag"—which potential obligations are the foundation of the Bankruptcy Court's ruling at issue here—is Brenntag's position that it is fully indemnified by the Debtors under the 2004 MSPA for Direct Claims where the underlying complaint either (i) alleges exposure to the Debtors' talc products before the 2004 Transaction or (ii) fails to

---

[31]  JA693 ¶ 38 (emphasis added).

[32]  *Id.*

specify any exposure periods.[33]  The Bankruptcy Court, the Debtors, and Brenntag adopted the term "Straddle Claim" to describe such claims.[34]  This concept of a single "Straddle Claim" is not only logically flawed but has no basis in the law.  In reality, a "Straddle Claim" attempts to describe cases where a talc victim's exposure to talc products supplied by WCD and Brenntag occurred during a timeframe that straddles the 2004 Transaction—meaning, both before and after the 2004 Transaction.  In such circumstances, the talc victim has *two distinct claims* against Brenntag (as opposed to a single "Straddle Claim"): (i) a derivative claim on a successor liability or other theory based on pre-2004 Transaction exposure to the *Debtors'* talc products; and (ii) a direct claim against Brenntag for post-2004 Transaction exposure to *Brenntag's* talc products.

Moreover, Brenntag's position that it is indemnified by the Debtors for the Direct Claims finds no support in the indemnification provisions of the 2004 MSPA, which provide, in relevant part:

> WCD shall indemnify and hold harmless [Brenntag] . . . and each of their respective successors, assigns, officers, directors, managers, employees and agents . . . from and against any Indemnified Losses incurred in connection with any present or future *Retained Subsidiary*

---

[33]  *See, e.g.*, *id.* ¶¶ 8, 11.

[34]  For instance, Brenntag defines a "Straddle Claim" as a "claim involving exposure to WCD talc, even where such claim also involves post-2004 exposure to a Brenntag product."  JA993 ¶ 2 n.4.

> *Asbestos Claims relating to WCD* or any alleged corporate predecessor-in-interest thereof.

JA352 § 12.1.2 (emphasis added). The 2004 MSPA defines "Retained Subsidiary

Asbestos Claims" as:

> any claim, action, lawsuit, litigation, arbitration or legal proceeding in court or tribunal of any kind, regardless of the legal or equitable theory alleged . . . *seeking to recover damages* . . . *allegedly caused by asbestos, asbestiform minerals and/or asbestos-containing products allegedly mined, manufactured, distributed, sold, used, installed, maintained, or possessed by any Retained Subsidiary [i.e., WCD]* or by any alleged predecessor entity of any Retained Subsidiary . . . .

*Id.* § 12.2 (emphasis added).

The plain language of the indemnification provisions is unambiguous: WCD's

indemnity obligations to Brenntag only cover claims *seeking damages* for injuries

caused by asbestos in WCD's talc products (*i.e.*, derivative claims against Brenntag

on account of WCD's talc liabilities). It does not cover Direct Claims against

Brenntag seeking to hold Brenntag liable for its own talc products and conduct

following the 2004 Transaction. The Direct Claims, by definition, do not seek any

damages against Brenntag for any pre-2004 Transaction exposure notwithstanding

that the operative complaint (which typically asserts claims against numerous

defendants, many of which are wholly unrelated to the Debtors) may contain such

allegations.

Consistent with the contractual language, all of the other parties to the

indemnification chain under the 2004 MSPA and the 2007 SPA—the Debtors,

14

NICO, and DB US—expressly dispute Brenntag's position that it is indemnified for the Direct Claims.[35]  Additionally, there is no evidence that the Debtors have ever indemnified Brenntag for the Direct Claims, or that Brenntag has ever submitted an indemnification claim to the Debtors for a Direct Claim.  Aside from Brenntag's self-serving statements through counsel, there is no evidence supporting the proposition that Brenntag has any indemnification rights against the bankruptcy estate on account of the Direct Claims.  Moreover, every other party in the litigation below (who has taken a position on this issue) disputes Brenntag's alleged indemnification for acts that occurred *after* its acquisition of WCD in 2004.

The Committee opposed the Debtors' request to enjoin the Direct Claims on jurisdictional and substantive grounds.[36]  After briefing and argument, on October 24, 2024, the Bankruptcy Court issued a written opinion granting the Debtors' request to stay and/or enjoin the Direct Claims ("Opinion").[37]

---

[35] *See* JA693 ¶ 3 n.7 ("The Debtors dispute Brenntag's purported entitlement to indemnification with respect to claims that are not Successor Liability Claims . . . ."); *see also* JA1320:10-15 (Counsel for NICO:  "The National Indemnity Company does, in fact – while it's not before Your Honor today, does, in fact, dispute Brenntag's alleged indemnity for the straddle claims from the debtors and from DB US under the 2003 MSPA. We just felt like we needed to go on the record today to say that."); JA1321:6-10 (Counsel for DB US:  "Don't want to repeat comments that were made by other parties but just also wanted to go on the record, Your Honor, to indicate that DB US disputes the assertions made by Brenntag with respect to the scope of the indemnities in the MSPA.").

[36] *See* JA949.

[37] JA1014.

***First***, the Bankruptcy Court held that it has core subject matter jurisdiction to enjoin the Direct Claims, reasoning that the Debtors' request "implicates § 362(a), which is a substantive right under the Code" and it "has jurisdiction to determine . . . whether it is appropriate to apply or extend the substantive rights afforded under § 362(a) to nondebtors."[38]  ***Second***, the Bankruptcy Court held that, alternatively, it has "related to" jurisdiction to enjoin the Direct Claims because such claims "implicate WCD's liability, which impacts Debtors' rights, results in liquidation of claims against the Debtors, and exposes Debtors to substantial indemnification obligations."[39]

***Third***, the Bankruptcy Court held *sua sponte* that "the Direct Claims against Brenntag involving pre-2004 exposure amount to effective Successor Liability Claims—that is, derivative claims against Brenntag based on WCD's conduct . . . or serve to liquidate claims against WCD."[40]  ***Fourth***, insofar as those Direct Claims are not already subject to the automatic stay, the Bankruptcy Court found that "unusual circumstances" warrant extending the automatic stay to those actions because "pre-2004 exposure allegations trigger WCD's potential liability . . . either through findings of liability or through indemnification obligations."[41]

---

[38]  JA1022.

[39]  JA1023.

[40]  JA1026.

[41]  *Id.*

16

**Fifth**, the Bankruptcy Court ruled *sua sponte* that "unusual circumstances" warrant extending the automatic stay, though an injunction, to the Direct Actions because WCD is an "indispensable party" to such litigation under Federal Rule of Civil Procedure 19 or comparable state rules of procedure.[42]  **Sixth**, the Bankruptcy Court held that, insofar as "§362(a) does not serve as an independent basis for extension of the stay to nondebtor parties—a preliminary injunction under Section 105 of the Bankruptcy Code should issue to extend the automatic stay to the Direct Claims."[43]

On November 20, 2024, the Bankruptcy Court entered an order ("Stay Order") memorializing the rulings in the Opinion.[44]  By its explicit terms, the Stay Order "constitutes a final appealable order within the meaning of 28 U.S.C. § 158(a)."[45] Appellants, comprised of the Committee and individual plaintiffs, filed their Joint Notice of Appeal on December 3, 2024.

## SUMMARY OF THE ARGUMENT

The Bankruptcy Court's grant of the Debtors' request to stay and/or enjoin the Direct Claims was erroneous and should be reversed.

---

[42]  JA1027-JA1028.

[43]  JA1030-JA1035.

[44]  JA1038.

[45]  *Id.* ¶ 14.

***First***, the Bankruptcy Court's *sua sponte* ruling that the automatic stay by operation of statute—without any extension thereof—applies to the Direct Claims against Brenntag (a non-debtor) contravenes black-letter Third Circuit law and, therefore, constitutes clear legal error. *See Brown v. Jevic*, 575 F.3d 322, 328 (3d Cir. 2009) ("[C]ourts have held that the automatic stay provision does not apply generally to non-debtor parties.").

***Second***, the Bankruptcy Court erred in holding that it has core subject matter jurisdiction to enjoin a third-party's direct claim against a non-debtor merely because a debtor seeks relief under § 362(a). The Third Circuit has held that a bankruptcy court lacks jurisdiction to "enjoin proceedings between third parties unless *those proceedings* [i.e., those requested to be enjoined] arise in or under or are related to the underlying bankruptcy." *W.R. Grace & Co.*, 591 F.3d at 175 (emphasis added). The Bankruptcy Court's analysis confuses its jurisdiction to hear a motion (because it seeks substantive relief under the Bankruptcy Code) with its jurisdiction to ultimately grant the relief sought therein—i.e., enjoining independent claims against a non-debtor.

***Third***, the Bankruptcy Court also erred by departing from controlling Third Circuit precedent regarding when a bankruptcy court can exercise "related to" jurisdiction over an action against a non-debtor based on that non-debtor's indemnification rights against the debtor. The Third Circuit has "stated and restated

that, in order for a bankruptcy court to have related-to jurisdiction to enjoin a lawsuit, that lawsuit must 'affect the bankruptcy without the intervention of yet another lawsuit.'" *W.R. Grace*, 591 F.3d at 173. Thus, "[t]o show indemnification sufficient for 'related-to' jurisdiction, a party must establish that the 'right to indemnification is *clearly established* and has accrued upon a filing of a civil action.'" *In re Imerys Talc Am., Inc.*, No. 19-MC-103 (MN), 2019 WL 3253366, at \*3 (D. Del. July 19, 2019); *accord Pacor, Inc. v. Higgins*, 743 F.2d 984, 994-95 (3d Cir. 1984); *In re Fed.-Mogul Glob., Inc.*, 300 F.3d 368, 382 (3d Cir. 2002).

The record below established not only that Brenntag's purported indemnification right for the Direct Claims is unsupported by the contractual language, but that it is also disputed by every single other party to the relevant indemnification contracts. The Debtors' own statements to the Bankruptcy Court clarified that "yet another lawsuit" would need to be commenced to determine whether the Debtors owe any indemnification obligations for the Direct Claims. Notwithstanding this record, the Bankruptcy Court held that the *mere possibility* of a third-party's *disputed* indemnity claims against the bankruptcy estate suffices for a bankruptcy court to exercise "related to" jurisdiction. That was clear error.

***Fourth***, the Bankruptcy Court erred as a matter of law in holding that Brenntag's (nonexistent) indemnity rights for the Direct Claims established "unusual circumstances" warranting an extension of the automatic stay to such claims. The

19

mere existence of an "indemnity provision is not in and of itself sufficient to satisfy the" "unusual circumstances" exception because "in the Third Circuit there must be sufficient evidence that the indemnity agreement is 'absolute' in order for the debtor to be deemed the real party in interest." *Jackson v. Trump Ent. Resorts*, Inc., No. CV 13-1605 (JHR/JS), 2015 WL 13637411, at *3 (D.N.J. Feb. 11, 2015); *Algemene Bank Nederland, N.V. v. Hallwood Indus., Inc.*, 133 B.R. 176, 180 (W.D. Pa. 1991). The Bankruptcy Court, however, chose to ignore such precedent, reasoning instead that the indemnity right need not be "absolute" but rather a "conceivable" indemnity right suffices to satisfy the "unusual circumstances" test.  As such, the Bankruptcy Court committed reversible error.

Moreover, the Bankruptcy Court also ignored the requirement that even if valid indemnity rights exist, the automatic stay still cannot be extended to protect non-debtors absent a demonstration that the purported obligations threaten the debtor's assets or reorganization.  *See, e.g.*, *In re Uni-Marts, LLC*, 399 B.R. 400, 416 (Bankr. D. Del. 2009).  The Bankruptcy Court gave no weight to the fact that two highly solvent non-debtors are currently responsible for the Debtors' indemnification obligations under the 2004 MSPA through backstop obligations.

***Fifth***, the Bankruptcy Court also erred in ruling *sua sponte* that WCD's alleged indemnity obligations for the Direct Claims render it an indispensable party to litigation involving the Direct Claims.  Well-established Third Circuit law plainly

holds that co-obligors or indemnitors are not indispensable parties.  *See Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 406, 409-412 (3d Cir. 1993) (holding that indemnitors and co-obligors were not indispensable parties to litigation even in circumstances of potential but uncertain impacts to later litigation against them due to *stare decisis*, collateral estoppel, and *res judicata*).

**Sixth**, the Bankruptcy Court abused its discretion by issuing a preliminary injunction enjoining the Direct Claims notwithstanding that the Debtors failed to satisfy by clear and convincing evidence at least three of the four traditional factors. The Bankruptcy Court erroneously held that the "likelihood of success" factor was satisfied even though the Debtors concede that they do not intend to seek any permanent relief with respect to the Direct Claims.  The Bankruptcy Court also improperly held that a risk of irreparable harm exists based on speculative indemnification obligations that, even if they were to exist, would be ultimately backstopped by other solvent non-debtors.  Further, the Bankruptcy Court failed to appropriately balance the harms among the competing parties.  And the public interest weighs decisively in favor of Brenntag's own tort victims, who will not diminish the estate by pursuing their Direct Claims.

In short, the judgment below should be reversed.

## ARGUMENT

## I. THE BANKRUPTCY COURT ERRED IN RULING *SUA SPONTE* THAT THE AUTOMATIC STAY—WITHOUT ANY EXTENSION THEREOF—APPLIES TO THE DIRECT CLAIMS

No party, including the Debtors, took the position in the proceeding below that the automatic stay under § 362(a) applied by operation of law to the Direct Claims.[46] Nevertheless, the Bankruptcy Court held *sua sponte* that the "continuation of [the Direct Claims] is expressly prohibited by § 362 of the Code" because the complaints in the underlying litigation may involve allegations of "pre-2004 exposure" which the Bankruptcy Court incorrectly held transformed the Direct Claims "into derivative claims against Brenntag based on WCD's conduct."[47]  The Bankruptcy Court's ruling finds no support in the law and contravenes well-established limits of the automatic stay because factual overlap cannot transform a direct claim against Brenntag for its separate post-acquisition conduct into a derivative claim against Brenntag predicated on the Debtors' conduct.

The Direct Claims are claims solely against Brenntag for its own independent conduct and products after it acquired WCD's operations.  For these claims, Brenntag is not standing in the shoes of the Debtors, as it would for a derivative

---

[46]  The Debtors' Motion asked the Court to "extend[] the automatic stay to" enjoin the Direct Claims.  *See, e.g.*, JA693 ¶¶ 42-43.  There is nothing in the Debtors' papers to suggest that they believed that Section 362, without any extension, authorized the Bankruptcy Court to enjoin the Direct Claims.

[47]  JA1026.

claim; it is at most a co-defendant of the Debtors. The automatic stay does not protect a debtor's co-defendants, even where there is legal and factual overlap between the claims. *See Jackson v. Trump Ent. Resorts, Inc.*, No. CV 13-1605 (JHR/JS), 2015 WL 13637411, at *2 (D.N.J. Feb. 11, 2015) (noting that the automatic stay "may not be invoked by solvent codefendants, even if they are in a similar legal or factual nexus with the debtor."); *cf. TPC Grp. Litig. Pls. v. SK Second Rrsv. L.P.*, 660 B.R. 177, 196 (D. Del. 2024) (allowing claimants to pursue a direct-action tort claim for negligent undertaking "although reliant on facts that might also support a [derivative] claim for veil piercing" against the non-debtor even though the derivative claims had been released under the plan of reorganization).

The Supreme Court recently articulated the essential difference between derivative claims, which belong to the bankruptcy estate, and direct claims, which belong to the debtor's tort victims. *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 219-20 (2024). The Court noted that "[i]n a derivative action, the named plaintiff is only a nominal plaintiff" but "[t]he substantive claim belongs to the corporation." *Id.* (citation omitted). As such, a bankruptcy court "may resolve derivative claims . . . because those claims belong to the debtor's estate." *Id.* at 219 (citation omitted). In contrast, a bankruptcy court lacks authority to resolve direct claims on a nonconsensual basis because those claims belong to the debtor's tort victims, not to the debtor-corporation. *Id.* at 219-20. The Bankruptcy Court erred

23

by overlooking this critical difference between derivative and direct claims against Brenntag.

As the Third Circuit has held, a chapter 11 filing by an asbestos debtor does not provide grounds to stay tort actions against the debtor's co-defendants, even those who are being sued on account of the same asbestos products that led to the debtor's bankruptcy filing. *See Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1070-76 (3d Cir. 1983) (declining to stay claims against debtor Johns-Manville's codefendants who are manufacturers, suppliers, and distributors of the asbestos products that led to Johns-Manville's bankruptcy filing even though "Johns-Manville assumed the lead in amassing the evidentiary material necessary to defend itself and its co-defendants in the upcoming litigation").

These rulings flow from the plain text of the automatic stay statute, which provides that a bankruptcy petition "operates as a stay, applicable to all entities, of . . . the commencement or continuation . . . of a judicial, administrative, or other action or proceeding *against the debtor*." 11 U.S.C. § 362(a)(1) (emphasis added). As the Third Circuit has noted, the default rule is that claims against non-debtors are not covered by the automatic stay under § 362(a)(1). *Brown*, 575 F.3d at 328; *Mar. Elec. Co., Inc. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d. Cir. 1991), *reh'g granted and opinion vacated* (Jan. 10, 1992), *opinion reinstated on reh'g* (Mar. 24, 1992) ("Although the scope of the automatic stay is broad, the clear language of

section 362(a) indicates that it stays only proceedings *against* a 'debtor'—the term used by the statute itself."); *see also* 3 COLLIER ON BANKRUPTCY ¶ 362.03 (16th ed. 2024) ("Although the stay protects the debtor against a broad range of actions and activities, it does not protect separate legal entities, such as corporate directors, officers or affiliates, partners in debtor partnerships or codefendants in pending litigation.").[48]

Against this overwhelming weight of authority, the Bankruptcy Court relied on a single Third Circuit case, *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506 (3d Cir. 1997), as support for the proposition that "the automatic stay—and not a stay extension or an injunction under § 105—preclude[s] a litigant from pursuing a state court action against a nondebtor."[49]  But *McCartney* itself noted that "the clear language of section 362(a) stays actions only against a 'debtor.'" *Id.* at 509 (however stating that certain "courts have *extended* the automatic stay to nonbankrupt codefendants" when those courts have made a finding of "'unusual

---

[48]  Other circuits have reached the same conclusion.  *See, e.g.*, *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985) ("By its terms the automatic stay applies only to the debtor, not to co-debtors . . . nor to co-tortfeasors."); *Williford v. Armstrong World Indus., Inc.*, 715 F.2d 124 (4th Cir. 1983) (A stay under § 362(a)(1) applies only to the debtor and not to the debtor's solvent co-defendants.); *Pitts v. Unarco Indus.*, 698 F.2d 313, 314 (7th Cir. 1983) ("The clear language of Section 362(a)(1) . . . extends the automatic stay provision only to the debtor filing bankruptcy proceedings and not to nonbankrupt co-defendants.  This interpretation has been adopted by several reviewing courts.").
[49]  JA1020.

circumstances'"). *McCartney* does not support the proposition that the automatic stay protects a non-debtor by operation of law. Indeed, if § 362's provisions already applied to actions against non-debtors, there would be no need for a court to "extend" the automatic stay to those actions.

For these reasons, a Bankruptcy Court must *extend* the automatic stay pursuant to § 105(a) to enjoin an action against a non-debtor. Section 362 alone is insufficient. Courts in this and other circuits agree that "extension" of the automatic stay against non-debtors is, despite the parlance, an act dependent on a bankruptcy court's equitable powers under § 105(a) rather than any authority under § 362.[50] The Bankruptcy Court erred in holding that § 362(a)—rather than an injunction

---

[50] *See, e.g.*, *In re Phila. Newspapers LLC*, 410 B.R. 404, 412 (Bankr. E.D. Pa. 2009) ("The law is clear that in some circumstances discretionary stays, beyond the scope of section 362, are appropriate and that a court's power to issue such injunctions stems from section 105 of the Code . . . ."), *aff'd sub nom. In re Phila. Newspapers, LLC*, 423 B.R. 98 (E.D. Pa. 2010); *see also In re Monroe Well Serv., Inc.*, 67 B.R. 746, 750 (Bankr. E.D. Pa. 1986) ("It is also clear that one of the purposes of section 105 is to give the bankruptcy court the power to issue stays or injunctions in situations not encompassed by section 362."); *In re Bankr. Appeal of Allegheny Health, Educ. & Rsch. Found.*, 252 B.R. 309, 331 (W.D. Pa. 1999) ("[T]he Bankruptcy Court has the authority to issue injunctions pursuant to section 105(a), 11 U.S.C. § 105, to enjoin proceedings that are not automatically stayed by section 362(a)."); *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993) ("Even if we were to adopt the unusual circumstances test, the bankruptcy court would first need to extend the automatic stay under its equity jurisdiction pursuant to 11 U.S.C. § 105."); *Tchrs. Ins. & Annuity Ass'n of Am. v. Butler*, 803 F.2d 61, 65-66 (2d Cir. 1986) (construing stay extension as an exercise of § 105 authority, and stating that it "cannot extend to efforts made in bad faith by non-bankrupt co-defendants in order to escape from . . . liability").

expanding the scope of the automatic stay under § 105—provides it with authority to enjoin third-party litigation in state courts.  The Bankruptcy Court's anti-textual application of § 362 warrants reversal.

## II.    THE BANKRUPTCY COURT DOES NOT HAVE SUBJECT MATTER JURISDICTION TO ENJOIN TALC CLAIMANTS' DIRECT CLAIMS AGAINST BRENNTAG

### A.    The Bankruptcy Court Erroneously Ruled that It Had Core Jurisdiction to Enjoin the Direct Claims Merely Because the Debtors Sought Relief Under Section 362

The Bankruptcy Court further erred in holding that it had core subject matter jurisdiction to enjoin talc victims' Direct Claims against Brenntag merely because the Debtors invoked provisions of the Bankruptcy Code in their motion.[51]  To enter an injunction, the Bankruptcy Court would first have had to determine that it had core jurisdiction over the Direct Claims themselves, but it did not make any such finding.  *W.R. Grace*, 591 F.3d at 175 (3d Cir. 2009).

"Bankruptcy jurisdiction extends to four types of title 11 matters: (1) cases 'under' title 11; (2) proceedings 'arising under' title 11; (3) proceedings 'arising in' a case under title 11; and (4) proceedings 'related to' a case under title 11." *Stoe v. Flaherty*, 436 F.3d 209, 216 (3d Cir. 2006), *as amended* (Mar. 17, 2006) (internal citations omitted).  The first three categories are considered "core" proceedings, whereas the fourth category, "related to" proceedings, are considered "non-core"

---

[51]  JA1022.

proceedings.[52]   *In re Resorts Int'l, Inc.*, 372 F.3d 154, 162 (3d Cir. 2004).   Under Third-Circuit law, a bankruptcy court does not have jurisdiction to "enjoin proceedings between third parties unless *those proceedings* arise in or under or are related to the underlying bankruptcy." *W.R. Grace & Co.*, 591 F.3d at 175 (emphasis added).   Here, contrary to the applicable standard, the Bankruptcy Court held that it had "arising under" or "arising in" jurisdiction to enjoin the Direct Claims because the "Debtors' Motion unquestionably implicates § 362(a), which is a substantive right under the Code."[53]   The Bankruptcy Court further reasoned that it had core jurisdiction to determine § 362(a)'s applicability and scope in this bankruptcy case.[54] But whether the Bankruptcy Court has jurisdiction to entertain the Debtors' request for relief under § 362 is a distinct question from whether it ultimately has jurisdiction to grant the relief sought therein—i.e., enjoining the Direct Claims. *See W.R. Grace*, 591 F.3d at 175 ("If it were the case that a bankruptcy court's jurisdiction over an adversary proceeding was sufficient in and of itself to give it jurisdiction to enjoin third parties . . . the Supreme Court's entire analysis of related-to jurisdiction in *Celotex* would have been superfluous.   Clearly it was not.").   The Bankruptcy

---

[52]   This appeal involves an adversary proceeding and thus is not a case under chapter 11.   *See* 1 COLLIER ON BANKRUPTCY ¶ 3.01 (16th ed. 2024) ("'Cases' under title 11 are to be distinguished from civil proceedings arising under title 11 or civil proceedings related to or arising in title 11 cases.").

[53]   JA1022.

[54]   *Id.*

Court's analysis only addressed the former issue, its jurisdiction to address the Debtors' Motion.  There was no argument or finding that the Direct Claims, which are simply state-law tort claims against a non-debtor, arise under the Bankruptcy Code or arise in these chapter 11 cases.[55]  Consequently, the Bankruptcy Court erred by applying the wrong standard when analyzing whether it had core jurisdiction to enjoin the Direct Claims.

What is more, the logical implication of the Bankruptcy Court's ruling is that a debtor's *mere invocation* of § 362 grants a bankruptcy court jurisdiction to enjoin any third-party litigation in state or Article III courts even if the litigation has no bearing on the debtor's bankruptcy estate.  Affirming the Bankruptcy Court's decision would effectively render meaningless longstanding Third Circuit jurisprudence established by the seminal ruling in *Pacor*—that a bankruptcy court lacks jurisdiction to stay actions between non-debtors unless those actions have some conceivable impact on the estate[56]—as any debtor could simply invoke § 362 to circumvent that jurisdictional requirement.  *See In re CIS Corp*., 172 B.R. 748,

---

[55]  Moreover, the record could not support such a finding.  *See In re Exide Techs.*, 544 F.3d 196, 206 (3d Cir. 2008) (reversing finding that state law claims asserted against non-debtor defendants were "core" matters under the Bankruptcy Code).

[56]  *See Pacor*, 743 F.2d at 994 ("The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy*."  (emphasis added)).

760 (S.D.N.Y. 1994) ("A debtor may not be allowed to circumvent the rule that a simple breach of contract or other state law claim does not fall within the bankruptcy court's core jurisdiction" by pleading alone, and "talismanically invoking [a provision of the Bankruptcy Code] does not turn the claim into a core matter").

The effect of affirming the Bankruptcy Court's ruling would be to drastically expand the jurisdictional reach of bankruptcy courts to enjoin proceedings in state and federal courts, including those with only a tenuous, if any, connection to the bankruptcy case.  This would contravene the core tenets of bankruptcy law and would impinge on the interest of comity with state courts and respect for state law. Contrary to the Supreme Court's recent decision in *Purdue Pharma*, it would provide a roving commission to bankruptcy judges to enjoin proceedings in state or Article III courts to address some perceived collective-action problems.  *See Harrington*, 603 U.S. at 220 (2024) ("Bankruptcy law may serve to address some collective-action problems, but no one . . . thinks it provides a bankruptcy court with a roving commission to resolve all such problems that happen its way, blind to the role other mechanisms . . . play in addressing them.").

Moreover, the Bankruptcy Court's invocation of a § 105 injunction does not provide it with core jurisdiction.  The Third Circuit has explicitly held that "§ 105 does not provide an independent source of federal subject matter jurisdiction." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 227, 224-25 (3d Cir. 2004), *as amended* (Feb.

23, 2005).   Accordingly, "jurisdiction must . . . exist independently of any . . . [request to] enjoin claims against non-debtors."   *Id.* at 225; *see also In re Johns-Manville Corp.*, 801 F.2d 60, 63 (2d Cir. 1986) ("Section 105(a) does not, however, broaden the bankruptcy court's jurisdiction, which must be established.").

### B.   The Bankruptcy Court Erred in Concluding that It Had "Related To" Jurisdiction to Enjoin the Direct Claims

The Bankruptcy Court further erred in holding it had "related to" jurisdiction to enjoin the Direct Claims on the grounds that the "Direct Claims against Brenntag necessarily implicate WCD's liability . . . and exposes Debtors to substantial indemnification obligations."   JA1022-JA1023.

In a string of cases spanning several decades, the Third Circuit has articulated a consistent standard for courts to apply in connection with determining whether a debtor's purported indemnification obligations to a third party provide sufficient grounds for "related to" jurisdiction over litigation against that third party.  *Pacor v. Higgins*, the seminal case on "related to" jurisdiction in this Circuit, held that "an action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." 743 F.2d at 994.

In *Pacor*, the court addressed whether the bankruptcy court had "related to" jurisdiction over a third-party personal injury suit against a non-debtor for damages

allegedly caused by asbestos supplied by the non-debtor but manufactured by the debtor. *Id.* at 986. Even though debtor Johns-Manville manufactured the asbestos giving rise to the third-party claim, the Third Circuit found no "related to" jurisdiction because the "primary action"—i.e., the suit between the two non-debtors—would not, on its own, result in an indemnification claim against the debtor. *Id.* at 995 ("[T]he primary action between Higgins and Pacor would have no effect on the Manville bankruptcy estate . . . . At best, it is a mere precursor to the potential third party claim for indemnification . . . .").

Under the *Pacor* test, "[t]o show indemnification sufficient for 'related-to' jurisdiction, a party must establish that the 'right to indemnification is *clearly established* and has accrued upon a filing of a civil action.'" *Imerys*, 2019 WL 3253366, at \*3 (quoting *In re Lower Bucks Hosp.*, 488 B.R. 303, 314 (E.D. Pa. 2013), *aff'd*, 571 F. App'x 139 (3d Cir. 2014)). A right is not clearly established or accrued in a situation where "the 'primary action' . . . would not, *itself*, result in an indemnification claim against the debtor." *Combustion Eng'g, Inc.*, 391 F.3d at 231 (emphasis added). In other words, "where the right to indemnification is contingent on a factual finding in an action not involving the bankruptcy debtor and requires the commencement of another lawsuit to establish that right, there is no effect on the bankruptcy estate and thus no 'related to' jurisdiction." *In re Lower Bucks Hosp.*, 488 B.R. at 314 (citing *In re Fed.-Mogul Glob., Inc.*, 300 F.3d at 382).

32

The Third Circuit has also applied the *Pacor* test in the context of determining whether a bankruptcy court has "related to" jurisdiction to enjoin third-party claims involving co-defendants of an asbestos debtor. In the *Combustion Engineering* bankruptcy, the Third Circuit held that a bankruptcy court does not have "related to" jurisdiction over "third-party claims involving asbestos or asbestos-containing products supplied by the debtor when the third-party claim d[oes] not directly result in liability for the debtor." *Combustion Eng'g, Inc.*, 391 F.3d at 227, 231 (bankruptcy court did not have "related to" jurisdiction where "potential indemnification and contribution claims against . . . [the debtors] had not yet accrued and would require another lawsuit before they could affect . . . [the debtors'] bankruptcy estate"); *see also W.R. Grace*, 591 F.3d at 173 (confirming that the Third Circuit has "stated and restated that, in order for a bankruptcy court to have related-to jurisdiction to enjoin a lawsuit, that lawsuit must 'affect the bankruptcy without the intervention of yet another lawsuit'" (citation omitted)).

These controlling decisions squarely addressed the relevant issue in the proceeding below. The Bankruptcy Court, however, departed from black-letter Third Circuit law, and failed to apply the consistent standard set forth in those cases: requiring clearly established indemnity rights for "related to" jurisdiction. Instead, the Bankruptcy Court held that the *mere potential* of a third-party's indemnity right against a bankruptcy estate is sufficient for "related to" jurisdiction. *See, e.g.*,

JA1022-JA1023, JA1025, JA1027 ("While the extent and scope of Debtors' indemnification obligation remain unknown at this juncture . . . , it is conceivable that any action . . . may trigger the referenced indemnification clause.").[57]

Brenntag's purported indemnity rights for the Direct Claims is untethered to the indemnification provisions of the 2004 MSPA and is disputed by the Debtors, the Committee, NICO, and DB US.  Indeed, there is no evidence in the record below—other than Brenntag's self-serving statements by counsel—that Brenntag has any indemnification rights for the Direct Claims, much less the requisite "clearly established" right that would accrue upon the filing of a Direct Claim.  *See D'Orazio v. Hartford Ins. Co.*, 459 F. App'x 203, 205 (3d Cir. 2012) ("[C]ounsel's representation did not constitute evidence of record.").

Indeed, the Debtors' own representations to the Bankruptcy Court show that there is no clearly established right to indemnification here.  In response to the

---

[57]  The Bankruptcy Court cites a single Third Circuit decision, *Belcufine v. Aloe*, 112 F.3d 633, 636 (3d Cir. 1997), for the proposition that "the Third Circuit has also ruled that contractual indemnity claims can have an effect on a bankruptcy estate and thus provide a basis for the exercise of 'related to' jurisdiction."  JA1022-JA1023.  *Belcufine*, however, does not support the proposition that disputed indemnity rights, as is the case here, are sufficient for "related to" jurisdiction.  There, the Third Circuit held that the bankruptcy court had "related to" jurisdiction to enjoin a third-party action between the debtor's employees and the debtor's officers on the basis that the officers held contractual indemnity rights against the debtor.  *Belcufine*, 112 F.3d at 635-637.  The debtor's indemnity obligation was based on clear language in its by-laws, and neither the debtor nor the employees contested the validity of those indemnity rights.  *See id.* at 635 n.2, 636.  Unlike the instant matter, the indemnity right in *Belcufine* was clearly established.

Bankruptcy Court's question regarding whether "Brenntag . . . [assert]s indemnification rights against the debtor for post-closing exposure[,]" Debtors' counsel stated that it "becomes *complicated* when the trial goes forward" because "if evidence were still introduced at trial showing a *potential* link to a WCD product . . . that would give Brenntag the *potential* right *to try* to assert an allocable right of liability in a *potential* indemnification claim with respect to the dates of exposure." JA887:5-15 (emphasis added). As such, the Debtors conceded in the proceeding below that a separate proceeding would have to occur for Brenntag to establish any right to indemnification on Direct Claims: the exact circumstance that the Third Circuit has held is insufficient to create "related to" jurisdiction. *See Fed.-Mogul Glob., Inc.*, 300 F.3d at 382 ("The test articulated in *Pacor* for whether a lawsuit could 'conceivably' have an effect on the bankruptcy proceeding inquires whether the allegedly related lawsuit would affect the bankruptcy proceeding *without* the intervention of yet another lawsuit." (emphasis added)).

In short, the Bankruptcy Court committed reversible error by not applying black-letter Third Circuit law. The Bankruptcy Court's ruling, if affirmed, would have the effect of allowing a bankruptcy court to exercise "related to" jurisdiction over an action against a non-debtor where the non-debtor merely alleges, devoid of any evidence, that it holds an indemnity right against the bankruptcy estate. That is not the law.

## III.   THE BANKRUPTCY COURT ERRED IN EXTENDING THE AUTOMATIC STAY TO THE DIRECT CLAIMS UNDER THE "UNUSUAL CIRCUMSTANCES" EXCEPTION

While the Third Circuit has upheld application of the Fourth Circuit's "unusual circumstances" exception for entering an injunction barring claims against non-debtors, that exception is narrow and reserved only for the "most extreme" circumstances. *See, e.g.*, *In re W.R. Grace & Co.*, No. 01- 01139 (JKF), 2004 WL 954772, at *2 (Bankr. D. Del. Apr. 29, 2004) ("Although the automatic stay can be extended to situations involving nondebtors, courts are careful to reserve such power to the most extreme and 'unusual circumstances.'").

Importantly, "unusual circumstances" do not exist where, as here, the claims are for a non-debtor's independent conduct. *A.H. Robins*, the seminal case on "extending the stay" under § 105, provides that an injunction of non-debtor litigation is inappropriate if the non-bankrupt defendant is "independently liable," as is the case for the Direct Claims against Brenntag. *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986) (citing *In re Metal Center*, 31 B.R. 458, 462 (D. Conn. 1983)); *accord CAE Indus. Ltd. v. Aerospace Holdings Co.*, 116 B.R. 31, 33 (S.D.N.Y.1990) (quoting *Robins*, 788 F.2d at 999); *Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199, 208 (2d Cir. 2014) (automatic stay is not extended to actions based on defendant's independent misconduct that harmed plaintiff directly, nor to

36

"actions taken against third parties that are only factually likely, as opposed to legally certain, to impact estate property").

In *Combustion Eng'g*, the Third Circuit reversed a section 105(a) injunction purporting to enjoin "independent, non-derivative third-party actions against non-debtors," reasoning that it was inappropriate for "the practical effect of the § 105(a) injunction . . . to extend bankruptcy relief to two non-debtor companies outside of bankruptcy." 391 F.3d at 233, 237. In light of this controlling authority alone, the Debtors' request to enjoin the Direct Claims through an extension of the automatic stay should be denied.

**A.    The Bankruptcy Court Erred in Holding that the Potential for an Indemnification Right Satisfies the "Identity of Interest" Test**

"[U]nusual circumstances" only exist where "there is such an identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *See, e.g.*, *In re W.R. Grace & Co.*, 2004 WL 954772, at *2 (quoting *McCartney v. Integra Nat'l Bank N.*, 106 F.3d 506, 510 (3d Cir. 1997)).

As the Fourth Circuit laid out in *Robins*, such an identity of interest exists only where the claims against the third party are "so intimately intertwined with . . . [claims against] the debtor that the . . . [debtor] may be said to be the real party in interest," such as when the "third-party . . . is entitled to absolute indemnity by the

37

debtor on account of any judgment that might result against them in the case." *A.H. Robins*, 788 F.2d at 999, 1001; *accord Jackson*, 2015 WL 13637411, at \*3.

The mere existence of "an indemnity provision is not in and of itself sufficient to satisfy the [unusual circumstances] standard" because "in the Third Circuit there must be sufficient evidence that the indemnity agreement is 'absolute' in order for the debtor to be deemed the real party in interest." *Jackson*, 2015 WL 13637411, at \*3; *Algemene Bank Nederland, N.V.*, 133 B.R. at 180. Accordingly, a contractual indemnification provision only creates "unusual circumstances" justifying an extension of the stay if the non-debtor defendant "is entitled to absolute indemnity by the debtor on account of any judgment that might result against the non-debtor." *In re Mid-Atl. Handling Sys.*, LLC, 304 B.R. 111, 128 (Bankr. D.N.J. 2003); *see also Forcine Concrete & Constr. Co. v. Manning Equip. Sales & Serv.*, 426 B.R. 520, 525 (E.D. Pa. 2010) ("Because there is no indication that such obligations would be 'absolute' in this case, the prospect of indemnification does not provide the 'unusual circumstances' required by McCartney to extend the automatic stay to the non-debtor parties.").

The Bankruptcy Court disregarded the controlling standard that recognizes the need for an indemnity obligation to be immediate and absolute to establish that a debtor and non-debtor have an identity of interest. But as discussed *supra* Part III, no evidence exists that the Debtors owe any indemnification obligations to Brenntag

38

for Direct Claims. And Brenntag's unsubstantiated claims to the contrary are disputed by every other party to the applicable indemnification contracts, as well as the Committee.

The Bankruptcy Court's holding relied primarily on its previous opinion in *In re LTL Management, LLC*, 638 B.R. 291, 312 (D.N.J. 2022). That decision is, however, inapposite as it involved a "Texas Two-Step" case in which the debtor had purported to assume sole responsibility for talc-related liabilities resulting from a pre-bankruptcy divisional merger. *Id.* at 297. In *LTL*, the debtor was seeking to enjoin clearly *derivative* claims against its affiliates that had "clearly established indemnification rights," *id.* at 314-15, whereas the Debtors here seek to enjoin *direct* claims against a non-debtor who does not hold any clearly established indemnification rights.

The other case directly relied on by the Bankruptcy Court, *In re American Film Technologies, Inc.*, 175 B.R. 847 (Bankr. D. Del. 1994), is also distinguishable. The case involved a stay of a single lawsuit brought against the directors "solely in their capacities as directors" for the debtors. *Id.* at 854. Simply put, the only allegations against the non-debtors were for actions they took on behalf of the debtors, which necessarily invoked the indemnity. *Id.* at 850-54.

No cases cited by the Bankruptcy Court provide grounds to depart from the Third Circuit rule that, absent an "absolute" right to indemnity, an indemnification

provision does not create "unusual circumstances."  In an attempt to reconcile black-letter law mandating an absolute indemnification right, the Bankruptcy Court tried to distort the plain meaning of the term "absolute."  JA1027-JA1028.  The Bankruptcy Court remarked, without any support, that it "is not convinced that indemnity must be 'absolute' in the sense that it is 'automatic' or 'an inevitable certainty' to warrant extension of the automatic stay."  JA1027.  Moreover, the Bankruptcy Court suggested that the indemnification provisions in the 2004 MSPA somehow give rise to an "absolute" indemnification right for the Direct Claims[58] despite recognizing that "the extent and scope of Debtors' indemnification obligations [for Direct Claims] remain unknown at this juncture[.]"  *Id.*

Notwithstanding its attempt to graft this antithetical meaning onto the word "absolute," the Bankruptcy Court cannot escape that it ultimately held that a disputed and merely conceivable indemnification right satisfies the "unusual circumstances" test, *id.*—a ruling that is plainly at odds with controlling Third Circuit law.  In *Jackson*, the court explicitly found that "the mere fact that [an asset purchase agreement] contains an indemnity provision is not sufficient to satisfy" the "standard [that] has been adopted by the Third Circuit."  2015 WL 13637411, at *3.  The Bankruptcy Court's ruling to the contrary was reversible error.

---

[58]  JA1028 ("The indemnification clause in the [2004] MSPA exists and, in that sense, Debtors' indemnification obligation is 'absolute.'").

## B.    The Alleged Indemnification Right Does Not Threaten the Estate's Assets or the Debtors' Reorganization

Even where, unlike here, a debtor does owe an absolute indemnity obligation to a non-debtor, the automatic stay still cannot extend to protect the indemnified non-debtor absent a demonstration that honoring those obligations would threaten the debtor's assets or reorganization. *See, e.g.*, *In re Uni-Marts, LLC*, 399 B.R. 400, 416 (Bankr. D. Del. 2009) (concluding that indemnification obligation did not constitute "unusual circumstances" where it did not threaten reorganization); *see also Millard v. Developmental Disabilities Inst., Inc.*, 266 B.R. 42, 45 (E.D.N.Y. 2001) ("Ultimately, the decisive issue is consideration of the same policy underlying the Automatic Stay—whether extension of the stay is necessary to foster the reorganization process.").

There is no dispute that the Debtors' hypothetical indemnification obligations to Brenntag are backstopped by two solvent non-debtors (namely, NICO and DB US) and those backstop obligations are triggered when the Debtors become "financially unable to satisfy" their indemnity obligations.[59]   The Debtors have already asserted that they are financially unable to satisfy their own administrative expenses (absent financing from their parent company).[60]  Because the Debtors have

---

[59]   *See* JA352 § 12; *see also* JA529 § 8.03(c).

[60]   *See* JA1371 ¶ 4 (Debtors stating that they "likely need to convert their chapter 11 cases to cases under chapter 7 of the Bankruptcy Code" absent approval of financing since they "have limited cash flows from interest on fixed assets, and finite assets

admitted that they are administratively insolvent, they cannot now argue that they are financially able to satisfy their indemnity obligations.  Any indemnity claims that may accrue by virtue of allowing the Direct Claims to proceed would neither diminish a single dollar from the estates nor threaten the Debtors' reorganization efforts.  The Bankruptcy Court's decision to disregard this factual record was in error.

### C.   The Court Erred by *Sua Sponte* Deciding that WCD Is an Indispensable Party to the Direct Claims

The Bankruptcy Court further erred in holding, without any briefing on the issue, that WCD is an indispensable party to the Direct Claims under Federal Rule of Civil Procedure 19.  *See* JA1028-JA1030.  "This rule provides that a party must be joined if the party has 'an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest.'"  *Alpha Painting & Constr. Co. Inc. v. Del. River Port Auth. of Pa. & N.J.*, 853 F.3d 671, 687 (3d Cir. 2017), *as amended* (Apr. 26, 2017) (quoting Fed. R. Civ. P. 19(a)(1)(B)(i)).  The Bankruptcy Court's conclusion that "a judgment that Brenntag is liable where evidence supports a finding of pre-2004 exposure *suggests* that WCD *may* also have

---

that are only being depleted as these chapter 11 cases proceed."); *see also* JA1401 ¶ 4 (Debtors stating that absent approval of $30 million in additional financing by their parent company, they "would only be able to administer these chapter 11 cases for a short period of time.").

liability[,]" JA1030, falls far short of the standard the Third Circuit has articulated for finding that a party is indispensable.

The Bankruptcy Court noted that in the Third Circuit, the mere potential for negative "persuasive precedent" against the non-party is insufficient to implicate Rule 19. *See Janney*, 11 F.3d at 404; *see also Ge. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 317 (3d Cir. 2007) (reaffirming that the mere possibility of persuasive precedent is insufficient to find a party is indispensable under Rule 19). Instead, a finding of necessary party status is only appropriate where the ruling would be binding based on "principles of *stare decisis*" based on collateral estoppel, *res judicata*, or some other basis. *Janney*, 11 F.3d at 409.

As a practical matter, no finding against Brenntag that its post-2004 conduct gave rise to independent claims against it could bind the Debtors, even if it included factual findings about pre-2004 asbestos exposure. The Bankruptcy Court made no findings of privity, sufficient representation or other such grounds to conclude that claim preclusion or issue preclusion would bind the Debtors in their absence. Nor could it have. *See, e.g.*, *Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 172 (3d Cir. 2009) (finding of *res judicata* requires "the same parties or the privities" and "the same cause of action"); *see also Biogen Int'l GmbH v. Amneal Pharms. LLC*, 487 F. Supp. 3d 254, 258 (D. Del. 2020) ("Under Third Circuit law, collateral estoppel applies when: (1) the identical issue was previously adjudicated, (2) that

43

issue was actually litigated, (3) the previous determination was necessary to the decision and (4) *the party being precluded from relitigating the issue was fully represented in the prior action*."  (emphasis added) (citation omitted)).

Moreover, even if *res judicata* or collateral estoppel were invoked against the Debtors in the future, courts would retain discretion to reject the application of *res judicata* and collateral estoppel as inequitable to the Debtors.  *See, e.g.*, *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 331 (1979) (Courts have "broad discretion to determine" whether offensive collateral estoppel "should be applied.").  Courts have rejected the application of those doctrines when invoked against a debtor who was in bankruptcy when the relevant adverse judgment was rendered.  *In re Eagleston*, 236 B.R. 183 (Bankr. D. Md. 1999) (refusing to give collateral estoppel effect to a judgment that had been entered against the debtor's professional corporation in a non-bankruptcy action after the debtor had entered bankruptcy); *see also In re Kmart Corp.*, 285 B.R. 679, 689 (Bankr. N.D. Ill. 2002) (agreeing to lift the stay where a plaintiff "agreed to stipulate that it will not use any findings derived from the trial against [the debtor] Kmart, and this [c]ourt has authority under § 105 to prevent such use by either party").

Moreover, courts in this and other circuits routinely refuse to stay actions against non-debtors regardless of the "apprehended later use [of] . . . collateral estoppel or the precedential effect of an adverse decision" as doing so would cause

44

a "vast and unwarranted interference with creditors' enforcement of their rights against non-debtor co-defendants." *Cook v. Blazer*, No. 7:15CV456, 2016 WL 3453663, at *1 (W.D. Va. June 20, 2016) (citations omitted).[61]

For these same reasons, the Bankruptcy Court incorrectly found that a claim against Brenntag for its own conduct would serve to liquidate damages against the Debtors. JA1026. Tellingly, the Debtors have never claimed that they are in privity with Brenntag with respect to adjudication of the Direct Claims. Such an argument would not pass muster on its face because when Brenntag seeks to apportion fault to the Debtors or introduce evidence of exposure to the Debtors' talc products in connection with the litigation of a Direct Claim, Brenntag is seeking to reduce its own liability by shifting blame to the Debtors, thereby rendering Brenntag's interests directly adverse to the Debtors—the opposite of "privity." The general rule that a nonparty to an action cannot be bound by any rulings or findings from that action in any subsequent proceedings applies to the doctrines of comparative fault and allocation of liability.[62] There is no evidence in the record that ordinary application

---

[61] *See also Queenie, Ltd. v. Nygard Int'l*, 321 F.3d 282, 288 (2d Cir. 2003) (refusing to "extend" automatic stay to non-debtors, reasoning that there is no precedent holding that stay should apply "to a non-debtor solely because of an apprehended later use against the debtor of offensive collateral estoppel or the precedential effect of an adverse decision").

[62] *See*, *e.g.*, *Bostick v. Flex Equip. Co.*, 54 Cal. Rptr. 3d 28, 43 (2007); *In re El Apple, Inc.*, 362 S.W.3d 154, 158 (Tex. App. 2012) (citing Tex. Civ. Prac. & Rem. Code Ann. § 33.004(i)(*l*), (2)); *Roverano v. John Crane, Inc.*, 226 A.3d 526, 545 (2020) (citing 42 Pa. Stat. and Cons. Stat. Ann. § 7102)); *Bondex Int'l v. Ott*, 774

of comparative fault doctrines would in any way prejudice the Debtors or that juries would be unable to follow standard instructions on the matter.

Moreover, the Bankruptcy Court relies on the (nonexistent) indemnification rights for Direct Claims to demonstrate that WCD is an indispensable party. It is, however, firmly established that co-obligors on contracts or parties subject to possible indemnity claims are *not* indispensable parties. *See Janney*, 11 F.3d at 406, 412 (cases stating that a defendant's alleged rights of contribution or indemnification against a third party do not require the impleading of that third party and holding same); *Bank of Am. Nat. Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.*, 844 F.2d 1050, 1054 (3d Cir. 1988) ("A defendant's right to contribution or indemnity from an absent non-diverse party does not render that absentee indispensable pursuant to Rule 19."). Indeed, if such situations so easily created "unusual circumstances" justifying extending the stay pursuant to an injunction, they would swallow the general rule that the automatic stay applies only to debtors. For these reasons, the Bankruptcy Court's conclusion that "unusual circumstances" existed was in error and warrants reversal.

---

N.E.2d 82, 87 (Ind. Ct. App. 2002); *BDO Seidman LLP v. Strategic Res. Corp.*, 896 N.Y.S.2d 15, 20 (2010); *Casco Indem. Co. v. O'Connor*, 755 A.2d 779, 782-83 (R.I. 2000); Mich. Comp. Laws Ann. § 600.2957.

## IV. THE BANKRUPTCY COURT ABUSED ITS DISCRETION IN ISSUING A PRELIMINARY INJUNCTION TO ENJOIN THE DIRECT CLAIMS

### A. The Debtors Did Not Meet the High Burden of Establishing the Necessity of a Preliminary Injunction

Even if the Bankruptcy Court had jurisdiction to issue the preliminary injunction, it is hornbook law that a preliminary "injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). Courts considering whether to grant interim injunctive relief apply the four traditional factors. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *In re G-I Holdings, Inc.*, 420 B.R. 216, 281 (D.N.J. 2009). Those four factors, as tailored to a bankruptcy case, are: (i) the debtor's reasonable likelihood of a successful reorganization; (ii) the imminent risk of irreparable harm to the debtor's estate in the absence of an injunction; (iii) the balance of harms between the debtor and its creditors; and (iv) whether the public interest weighs in favor of an injunction. *G-I Holdings*, 420 B.R. at 281. To be successful, the movant must establish all four of these elements by clear and convincing circumstances. *In re Phar-Mor, Inc. Sec. Litig.*, 164 B.R. 903, 907 (W.D. Pa. 1994).

The Bankruptcy Court abused its discretion by holding that that the Debtors satisfied each of the four elements by clear and convincing evidence.

### B. The Bankruptcy Court Erred in Holding that the Likelihood of Success Prong Was Satisfied

In the bankruptcy context, the first factor refers to the likelihood of a successful reorganization. Generally speaking, there must be some nexus between the claims sought to be enjoined and whether a successful reorganization would resolve such claims.[63] A request for a preliminary injunction should be denied when, as here, it is inconsistent or unconnected with the ultimate relief the movant seeks. *See Adams v. Freedom Forge Corp.*, 204 F.3d 475, 489-90 (3d Cir. 2000) (affirming denial of injunction where plaintiffs' harm was "insufficiently related to the complaint and d[id] not deserve the benefits of protective measures that a preliminary injunction affords").

It is undisputed that the Debtors do not intend to address the Direct Claims in any way in their chapter 11 cases.[64] The Bankruptcy Court nonetheless determined that the Debtors' request to enjoin the Direct Claims "is consistent with [their] ultimate goal of reorganization which includes its desire to maximize its assets."

---

[63] *See, e.g.*, *McMillian v. Konecny*, No. 9:15-CV-0241, 2018 WL 813515, at *2 (N.D.N.Y. Feb. 9, 2018) ("Because one of the issues presented by a motion for injunctive relief is whether the movant has shown a likelihood of success on the merits of a claim, the relief sought by a plaintiff in a motion for a temporary restraining order or preliminary injunction must relate to the claims of the plaintiff's complaint.").

[64] *See* JA693¶ 102 ("[T]he Debtors are not seeking to permanently enjoin plaintiffs from prosecuting direct claims against Brenntag for Brenntag's independent post-2004 conduct.").

JA1032.  The Bankruptcy Court's analysis, however, did not address whether a successful reorganization by the Debtors would resolve the Direct Claims that they seek to preliminarily enjoin.  The answer to that question is no.

The Supreme Court's opinion in *Winter* is instructive:  where  a party seeks an injunction untethered to the ultimate relief sought in the case, a preliminary injunction should not issue. There, the Court denied plaintiffs' request for a preliminary injunction to enjoin the Navy from conducting sonar training exercises. *Winter,* 555 U.S. at 12-19.  The Supreme Court rejected the request as inconsistent with any ultimate relief the plaintiffs were seeking in the case where the "ultimate legal claim is that the Navy must prepare an . . . [environmental impact study], not that it must cease sonar training."  *See id.* at 32.  In other words, the requested preliminary injunction was inappropriate because it would have provided temporary relief inconsistent with the permanent relief the plaintiffs sought.  So too here.

As such, the Bankruptcy Court abused its discretion in holding that the Debtors satisfied the likelihood of success prong.  *See, e.g.*, *Jones v. Schortman*, No. 22-CV-1512 (VDO), 2024 WL 449612, at *1 (D. Conn. Feb. 5, 2024) (Because "one of the requirements for an award of preliminary injunctive relief is demonstration of a likelihood of success on the merits" of a claim, a movant's "request for preliminary injunctive relief must relate to the [underlying] claims proceeding in th[e] case."); *see also James v. Varano*, No. 1:14-CV-01951, 2017 WL 895569, at *3 (M.D. Pa.

Mar. 7, 2017) ("[B]ecause the purpose of preliminary injunctive relief is to prevent irreparable injury pending the resolution of an underlying claims on the merits, the injury claimed in the motion for preliminary injunctive relief must relate to the conduct alleged and permanent relief sought in the plaintiff's complaint.").

## C. The Bankruptcy Court Erred in Holding that Phantom Indemnification Obligations Created a Risk of Irreparable Harm to the Estates

The Supreme Court has emphasized that a party "seeking preliminary relief . . . [must] demonstrate that irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at 22. "Issuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with our characterization of injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.* Moreover, the threatened harm cannot be speculative, and the party seeking preliminary relief must produce affirmative evidence of the potential harm. *ADP, Inc. v. Levin*, No. 21-2187, 2022 WL 1184202, at *2 (3d Cir. Apr. 21, 2022).

The Bankruptcy Court abused its discretion in holding that Brenntag's purported indemnification rights for the Direct Claims established a risk of irreparable harm,[65] notwithstanding that there was no evidence in the record that the

---

[65] JA1033.

indemnifications posed any threat of any harm to the bankruptcy estate, much less irreparable harm.

*First*, there is no evidence in the record—other than Brenntag's unsubstantiated assertion—that there are actually any valid indemnification rights for the Direct Claims.  The lack of evidence on the indemnification rights rendered the injunction improper.  *See ADP, Inc.*, 2022 WL 1184202, at \*2 (noting that speculative evidence does not suffice for the issuance of a preliminary injunction).

*Second*, the Bankruptcy Court also abused its discretion by disregarding the fact that, even if the Direct Claims could trigger the Debtors' indemnity obligations (they cannot), the Debtors' estates would still not be diminished because two solvent non-debtors—namely, NICO and DB US—are currently on the hook for the Debtors' indemnity obligations to Brenntag.  Moreover, because the Debtors' estates are in substance administratively insolvent,[66] there no serious dispute that NICO and DB US are currently responsible for satisfying those indemnity obligations if they exist.[67]

*Third*, even assuming the Direct Claims could trigger any indemnity obligations of the Debtors, they still would not pose a threat of irreparable harm to the Debtors' estates.  Brenntag would simply have one contingent prepetition claim

---

[66]  *See* JA1371 ¶ 4.

[67]  *See* JA352 § 12; *see also* JA529 § 8.03(c).

51

for indemnification under 11 U.S.C. § 502(e)(1)(B),[68] which claim would be subject to subordination or disallowance under § 502(e)(1)(B). The Bankruptcy Code already provides a mechanism to address third-party indemnification claims, and as such, contingent claims (that may ultimately be disallowed) falls short of establishing irreparable harm.

**Fourth**, as explained in Part III.C, the Bankruptcy Court abused its discretion in holding that the Debtors' estates would be irreparably harmed if the Direct Claims are allowed to proceed due to "litigation prejudice in the form of *res judicata*, collateral estoppel, and record taint."[69]    The Bankruptcy Court's ruling is inconsistent with controlling and persuasive authority. *See, e.g.*, *Elkadrawy*, 584 F.3d at 172; *Biogen Int'l GmbH*, 487 F. Supp. 3d at 258; *Queenie, Ltd*, 321 F.3d at 288.

For these reasons, the Bankruptcy Court abused its discretion when it found a risk of irreparable harm to the Debtors.

---

[68]  *See In re Drexel Burnham Lambert Grp., Inc.*, 146 B.R. 92, 96 (S.D.N.Y. 1992) (stating that "it is well established that contingent claims for indemnity are covered by § 502(e)(1)(B) where the claimant is co-liable with the debtor on the underlying claim").

[69]  JA1033.

### D. The Bankruptcy Court Did Not Appropriately Balance the Competing Harms

The Bankruptcy Court did not appropriately weigh the competing interests of tort victims against the Debtors' estates. The purported harms to the Debtors' estates are speculative at best. On the other hand, enjoining the Direct Claims inflicted—and continues to inflict—manifest injustice upon innocent tort victims. *See Johns-Manville Sales Corp.*, 723 F.2d at 1076 (noting "the clear damage to the plaintiffs is the hardship of being forced to wait for an indefinite and, if recent experience is any guide, a lengthy time before their causes are heard" if cases were stayed against co-defendants of a bankrupt asbestos debtor and denying the preliminary injunction). The Bankruptcy Court's ruling to the contrary was an abuse of discretion.

### E. The Bankruptcy Court Abused Its Discretion in Holding that Enjoining the Direct Claims Is in the Public Interest

The Bankruptcy Court further abused its discretion in holding that the public interest would be served by stopping tort victims from pursuing their direct claims against a non-debtor.[70] The Bankruptcy Court's ruling on the "public interest" prong was primarily based on its (unsupported) determination that allowing the Direct Claims to advance would result in "future claimants[] and Environmental Claimants" facing "inequities."[71] Future claimants and environmental creditors,

---

[70] JA1034.

[71] *Id.*

however, would not be harmed in any way if talc claimants were able to obtain compensation from Brenntag for its post-2004 Transaction liability. Neither the Future Claimants' Representative nor any of the environmental creditors argued in the proceedings below that allowing the Direct Claims to proceed would prejudice the rights of their constituencies.

Moreover, the public interest here strongly favors the tort victims' due process rights under the Seventh Amendment and ability to obtain compensation for their direct claims against solvent, non-debtor tortfeasors. *See, e.g.*, *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 59-61 (1989) ("Congress cannot eliminate a party's Seventh Amendment right to a jury trial merely by relabeling the cause of action to which it attaches and placing exclusive jurisdiction in an administrative agency or a specialized court of equity."). Non-debtor Brenntag's independent conduct and products have harmed countless innocent Americans nationwide. As such, there is a strong public interest in allowing claimants to continue pursuing Brenntag for its independent liability in state courts without delay. *See, e.g.*, *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982) (discussing "public interest in deterrence of unlawful conduct and in compensation of victims"); *Dent v. Cunningham*, 786 F.2d 173, 176-77 (3d Cir. 1986) (noting that New Jersey courts have long recognized a significant public interest in compensating their injured domiciliary).

On the other hand, there is zero public interest in allowing tortfeasors like Brenntag to escape litigation stemming from their own, direct liability simply by threatening to sue for indemnification (without evidence of any right to indemnification) or threatening to blame the Debtors for its own conduct (again, without evidence that it could actually do so).

The judgment below should be reversed.

## CONCLUSION

This Court should reverse and remand for the Bankruptcy Court to vacate the Stay Order.

Dated: March 21, 2025

/s/ Arthur J. Abramowitz
**SHERMAN, SILVERSTEIN,
KOHL, ROSE & PODOLSKY, P.A.**
Arthur J. Abramowitz
Ross J. Switkes
308 Harper Drive, Suite 200
Moorestown, NJ 08057
Tel: (856) 662-0700
Email:  aabramowitz@shermansilverstein.com
        rswitkes@shermansilverstein.com
**COOLEY LLP**
Cullen D. Speckhart
Michael Klein
Jeremiah P. Ledwidge
55 Hudson Yards
New York, NY 10001
Tel: (212) 479-6000
Email:  cspeckhart@cooley.com
        mklein@cooley.com
        jledwidge@cooley.com

**CAPLIN & DRYSDALE, CHARTERED**
Kevin C. Maclay
Todd E. Phillips
Kevin M. Davis (admitted *pro hac vice*)
Serafina A. Concannon
Shahriar M. Raafi (admitted *pro hac vice*)
1200 New Hampshire Avenue NW, 8th Floor
Washington, DC 20036
Tel: (202) 862-5000
Email: kmaclay@capdale.com
        tphillips@capdale.com
        kdavis@capdale.com
        sconcannon@capdale.com
        sraafi@capdale.com

*Co-Counsel to the*
*Official Committee of Talc Claimants*

**DEAN OMAR BRANHAM SHIRLEY, LLP**
Charles W. Branham III
J. Bradley Smith
302 North Market Street, Suite 300
Dallas, TX 75202
Tel: (214) 722-5990
Email:  tbranham@dobslegal.com
         bsmith@dobslegal.com

*Counsel to Donna A. Spaulding*

**KAZAN, McCLAIN, SATTERLEY &
GREENWOOD**
A Professional Law Corporation
Steven Kazan, Esq.
Joseph D. Satterley, Esq.
Jack London Market
55 Harrison Street, Suite 400
Oakland, CA 94607
Tel: (510) 302-1000
Email:  skazan@kazanlaw.com
         jsatterley@kazanlaw.com

*Counsel to Shelly Yerkes*

**SIMON GREENSTONE PANATIER, P.C.**
Leah C. Kagan, Esq.
901 Main Street, Suite 5400
Dallas, TX 75202
Tel: (214) 276-7680
Email:  lkagan@sgptrial.com

*Counsel to Lilo Cooper*

**WEITZ & LUXENBERG, P.C.**
Perry Weitz, Esq.
Justine Delaney, Esq.
700 Broadway
New York, NY 10003
Tel: (212) 558-5500
Email:  pweitz@weitzlux.com
             jdelaney@weitzlux.com

*Counsel to Katia Figueroa*

**MRHFM LAW**
Marcus E. Raichle, Esq.
Clay Thompson, Esq.
1015 Locust Street, Suite 1200
St. Louis, MO 63101
Tel: (314) 241-2003
Email:  mraichle@mrhfmlaw.com
             cthompson@mrhfmlaw.com

*Counsel to Juliet Gray*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. Bankr. P. 8015(a)(7)(C), the undersigned hereby certifies that:

1.  This brief complies with the type-volume limitations of Fed. R. Bankr. P. 8015(a)(7)(B) because the brief contains 12,837 words, excluding the parts of the brief exempted by Fed. R. Bankr. P. 8015.

2.  This brief complies with the typeface requirements of Fed. R. Bankr. P. 8015(a)(5) and type style requirements of Fed. R. Bankr. P. 8015(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word, in 14-point Times New Roman.

Dated:  March 21, 2025          */s/ Arthur J. Abramowitz*
                                Arthur J. Abramowitz
                                **SHERMAN, SILVERSTEIN, KOHL,
                                ROSE & PODOLSKY, P.A.**